UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TAYLOR D.,

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 3:25-cv-00958-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Taylor D. seeks judicial review of the Commissioner's final decision denying Social Security disability benefits. Plaintiff asserts the Administrative Law Judge erred in assessing his symptom allegations. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

## I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc.*

*Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

The ALJ recounted plaintiff's symptom testimony, Tr. 21-22, but then found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22. After summarizing plaintiff's medical history, the ALJ concluded:

> Although the claimant's heart failure and lung disease are limiting, the improvement in heart functioning shown on testing since July 2021, the reports of only occasional lower extremity swelling, the reports of feeling well and healthy in late 2022-mid-2023 primary care appointments, the reports of relatively well controlled asthma symptoms, the observations of mostly normal breathing and no significant lower extremity swelling in examinations, and the limited observations of the claimant appearing fatigued when seeing providers, supports finding that he is capable of working fulltime at the light exertional level with standing and walking restricted to no more than four hours in a workday.

Tr. 24.

The ALJ cited to left ventricular ejection fraction ("LVEF") results that showed improvement in heart functioning. Tr. 22-24 (citing Tr. 960, 2758-2762). When plaintiff sought emergency room treatment in July 2021, his LVEF was 15% and he was evaluated for a heart transplant. On October 21, 2021, his LVEF was 45-50%, indicating "significant LV recovery and

response to medical therapy." Tr. 1020-21; *see* Tr. 1518 ( "LV systolic function has significantly improved"); Tr. 1035 ("Overall, the patient is likely too well to be listed for transplant."). In November 2022, plaintiff's LVEF was 55-60%, Tr. 2886, and in November 2023, plaintiff's LVEF was 60%, within normal range. Tr. 2680, 2705-06. The ALJ also observed that in March 2024, plaintiff's heart disease was assessed as NYHA Class II, stage C, "which indicates a slight limitation in physical with some symptoms with ordinary physical activity." Tr. 24 (citing Tr. 2886-2894). Those records also indicate that plaintiff's "[f]atigue is likely multifactorial (insomnia, depression, chronic illness) and less likely cardiac related, especially given recovered LVEF." Tr. 2887. Plaintiff's improved LVEF is a valid basis upon which to assess plaintiff's subjective symptom testimony. *See Hixenbaugh v. Colvin*, No. 15-342, 2015 WL 5883733, at *2 (W.D. Pa. Oct. 8, 2015) (observing that while "[i]t may be improper for an ALJ to reach a lay conclusion . . . that the mere fact of a normal heart test translates to improved functional capability," an ALJ "certainly may assess the claimant's credibility").

Plaintiff argues that "[i]mprovement in one set of tests did not negate the ongoing deficiencies revealed in the others." Pl. Br. 8. Plaintiff argues the ALJ erred in comparing his September 2021 exercise stress test with his October 2021 echocardiogram to conclude that his heart functioning had improved, because the echocardiogram "showed the physical functioning of Plaintiff's heart while the exercise stress test was measuring his response to increased physical activity." Pl. Br. 8. Plaintiff contends that, "[w]hile his heart was functioning more efficiently, he continued to have significantly reduced oxygen consumption; a poor heart rate response to exercise; and a severe airflow limitation," which shows that his "functioning remained limited, despite the improvements shown in the" echocardiogram. *Id.* Plaintiff also points to the "pulmonary function test performed around that same time that showed severe airflow

obstruction and severe air trapping, though he had a marked response to bronchodilation." *Id*. (citing Tr. 1055).

The ALJ recognized that the results of the September 2021 stress test "indicated some difficulty with shortness of breath and dizziness." Tr. 22 (citing Tr. 1045). But the ALJ did not rely solely on the LVEF results in assessing plaintiff's subjective symptom testimony. The ALJ noted that in October 2021, plaintiff told his cardiologist he had been doing well until he helped with a construction project and became lightheaded. Tr. 23 (citing Tr. 1035 (plaintiff reported "he was feeling very well and had no limitations from a cardiac perspective and was able to help with some light construction without issues"). The ALJ further noted that when plaintiff saw a cardiologist in November 2021, he reported feeling well except for episodes of dizziness at night and with positional changes. Tr. 23 (citing Tr. 1020-23). The ALJ also observed that in February 2022, plaintiff's dizziness improved overall, he told his provider that his fluid retention had improved with Lasik, he showed no sign of lower extremity swelling, and he showed no signs of difficult breathing. Tr. 23 (citing Tr. 1767-70). The ALJ further observed that, in May 2022, plaintiff reported he did not have shortness of breath when engaged in activities of daily living and only experienced it when he walked fast or up inclines. Tr. 23 (citing Tr. 2576-80). Further, the ALJ cited to a September 2023 stress test where "[t]he maximal work capacity and oxygen consumption were mildly diminished." Tr. 24 (citing Tr. 2629). The ALJ accounted for all of this in the RFC, which limits plaintiff to light work with a total of four hours standing and/or walking and only occasional climbing of ramps and stairs. Tr. 20.

Plaintiff argues the ALJ erred in noting that, in February 2022, his dizziness had improved overall because he continued to report episodes of dizziness. Pl. Br. 9 (citing Tr. 23). But in making this finding, the ALJ cited verbatim to a chart note in February 2022 that stated

plaintiff "[r]eports overall his dizziness is improved since his last visit." Tr. 23 (citing Tr. 1767). The ALJ also cited to other records showing improvement of dizziness or only limited dizziness. The ALJ cited to November 2021 medical records indicating that plaintiff felt well except for having episodes of dizziness at night and with position changes, Tr. 23 (citing Tr. 1020-23), and September 2023 records in which plaintiff reported that he did not have dizziness often. Tr. 24 (citing Tr. 2624-27). The ALJ recognized that, in November 2023, plaintiff reported his main symptoms included dizziness and fatigue. Tr. 24 (citing Tr. 2616-19). But the ALJ observed that on the same visit, plaintiff reported only slight and occasional edema, and the LVEF from November 2023 was 60%, i.e., normal. *Id.* The ALJ's conclusion that plaintiff's dizziness had improved was a rational interpretation of the record, which generally shows improvement of dizziness. *See also* Tr. 1771 (January 2022: "Dizziness: no"); Tr. 2541 (May 2022: "Dizziness: no"); Tr. 2576 (September 2022: "Dizziness: a few time in the past few months"; "He reports some dizziness/lightheadedness occasionally (3 times in the last 3 mo"); Tr. 2651 (December 2022: "Dizziness: a little [b]it"); Tr. 2624 (September 2023: "dizziness sometimes, but not often"), Tr. 2632 (August 2023: "occasional lightheadedness and dizziness"); Tr. 2891 (March 2024: "Dizziness: occasionally").[1]

The ALJ noted that, in a follow-up appointment with a cardiologist in late July 2021, plaintiff "reported issues with fatigue, insomnia," but "did not report significant difficulty with

[1] Moreover, the ALJ's conclusions are consistent with plaintiff's hearing testimony where he stated that the dizziness was "not quite as bad as it was when [he] was first diagnosed" and stated it was "still an issue" only when he was "really fatigued" or had been lying down for more than four to five hours, after which he would wake up and "feel a little dizzy." Tr. 48. Also, a chart note from October 2021 indicates that the cause of plaintiff's dizziness is "unclear," given the results of a CAT scan that showed no evidence of tears in the arteries or aneurysm, and normal heart enzyme testing. Tr. 1536; *see also* Tr. 2310 ("Dizziness is a common symptom . . . Today's exam did not show an exact cause for your dizziness.").

shortness of breath, dizziness, or leg swelling/edema." *Id.* (citing Tr. 593-96). Plaintiff argues that "none of the signs mentioned by the ALJ are discussed on the page that he cited." Pl. Br. 7. The ALJ in fact cited to more than one page of records. *See* Tr. 22 (citing Tr. 592-96). But plaintiff is correct that these records contain conflicting information. The records indicate that plaintiff did not report shortness of breath, dizziness, or edema, but elsewhere state that he experienced edema, dizziness upon standing, and had "intermittent anxiety attacks and feels like he cannot breathe." Tr. 594-96.

Nevertheless, the ALJ's conclusion that plaintiff's improvement in heart functioning was evidenced by "mostly normal breathing and no significant lower extremity swelling in examinations" is supported by the record. The ALJ observed that a pulmonary function test in August 2023 showed severe obstructive lung disease, i.e., exercise-induced asthma, *see* Tr. 2874, with elevated DLCO, "but [plaintiff] had a positive bronchodilator response, which indicates this lung disease is amenable to treatment." Tr. 24 (Tr. citing 2631); *see also* Tr. 2168 ("The response to inhaled bronchodilator challenge is statistically significant."); Tr. 2169 ("marked bronchodilator response"); Tr. 2952 (diagnosis of unspecified asthma, albuterol inhaler prescribed). The ALJ observed that plaintiff "reported a significant improvement in breathing symptoms in May 2022 and it was noted that he had good control of his asthma but reported that he still had shortness of breath with exertion." Tr. 23 (citing Tr. 2542 ("Seen by pulmonology 2/22/22 . . . at which time he reported significant improvement in breathing with inhaler" and reported feeling dyspnea with exertion, i.e., lifting more than two boxes); Tr. 2563 (reporting that after restarting his inhaler at a higher dose, he had "again gotten to the point where he does not need to use his albuterol at all"). The ALJ noted that plaintiff experienced shortness of breath when walking to a clinic in September 2022, but reported he did not have shortness of breath

with activities of daily living and only experienced it with exertion or when walking fast or up inclines. Tr. 23, 25 (citing Tr. 2542, 2563-64, 2576-2580); *see* Tr. 2577 ("his breathing is mildly worse . . . and he got short of breath walking to clinic," he "[d]enies dyspnea with ADLs," and he "does feel it when he is walking fast or with inclines"). The remainder of the record shows that plaintiff had "mostly normal breathing," as the ALJ concluded. *See* Tr. 694 (July 2021: "Feels well today no shortness of breath"); Tr. 702 (July 2021: "Breathing comfortably with normal respiratory effort."); Tr. 1105 (July 2021: "He is not experiencing SHOB"); Tr. 1143 (July 2021: "He does not appear to be short of breath."); Tr. 1076 (August 2021: "Denies SOB"); Tr. 1045 (September 2021: "Still some SOB, better with inhaler."); Tr. 1035 (October 2021: "He denies any current chest pain, shortness of breath or lightheadedness."); Tr. 1039 (October 2021: "SOB is better today but he has some wheezing. He was told he has asthma and has been referred to pulmonology."); Tr. 1519 (November 2021: prescribed inhaler "in case he has acute shortness of breath," "Albuterol as needed for shortness of breath"); Tr. 1784-85 (November 2021: "Breathing comfortably with normal respiratory effort," "DOE/SOB: no"); Tr. 2541 (May 2022: "DOE/SOB: a little bit with exertion"); Tr. 2576 (September 2022: "DOE/SOB: when walking yes"); Tr. 2816 (October 2022: "Denies SOB"); Tr. 2653 (November 2022: "No chest discomfort or shortness of breath/dyspnea on exertion."); Tr. 2620 (November 2023: shortness of breath on exertion); Tr. 2842 (February 2023: "Denies SOB, wheezing, or cough"); Tr. 2890-91 (March 2024: "Breathing comfortably with normal respiratory effort," dyspnea on exertion). To account for the pulmonary symptoms that were supported by the record, the ALJ restricted plaintiff to light work with standing and walking no more than four hours in an eight-hour workday. Tr. 20.

The ALJ's conclusion that plaintiff had "no significant lower extremity swelling in examinations" is also supported by the record. Tr. 24. The ALJ observed that plaintiff reported

fluid retention in February 2022 but that his symptoms improved with Lasix and he showed no signs of lower extremity swelling on examination. Tr. 23 (citing 1767-1768). The ALJ also observed that plaintiff showed no signs of lower extremity swelling in May 2022, Tr. 23 (citing Tr. 2576-79), and in September 2023, he reported he had some ankle swelling, but he was not complying with Lasix treatment, and he showed no signs of lower extremity swelling. Tr. 24 (citing Tr. 2624-27).

Plaintiff also argues the ALJ erred in discounting his symptom testimony based on his explanation why he stopped working. It is unnecessary to reach this issue because the ALJ provided at least one valid reason to discount plaintiff's subjective symptom testimony.

In sum, the ALJ recognized that plaintiff's "heart failure and lung disease are limiting," but permissibly rejected plaintiff's claimed severity of those limitations because they conflicted with evidence in the record. *Smartt*, 53 F.4th at 498. The ALJ's interpretation of the record was rational. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Because the ALJ provided clear and convincing reasons, supported by substantial evidence, to discount plaintiff's subjective symptom testimony, the decision must be upheld.

**CONCLUSION**

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED September 4, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge